UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIO CARPIO, *on behalf of himself and all others similarly situated,*<br><br>         *Plaintiff,*<br><br>  -against-<br><br>WINGSTOP RESTAURANTS INC.,<br><br>         *Defendant.* | **RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

  Plaintiff JULIO CARPIO ("Plaintiff"), individually and on behalf of all other similarly situated persons employed by Defendant WINGSTOP RESTAURANTS INC. ("Defendant"), as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

  1. Plaintiff and a proposed class of similarly situated persons worked for Defendant at their corporate-owned Wingstop restaurants located throughout New York State, and worked shifts or split-shifts covering a span of more than 10 hours in a workday, and were note paid required "spread of hours" premium for each such workday.

  2. Plaintiff and a proposed class of similarly situated persons worked for Defendant at their corporate-owned Wingstop restaurants located throughout New York State, and were required to wear uniforms during the employment, and were not paid required uniform maintenance pay pursuant to 12 NYCRR 142-2.5(c).

  3. Plaintiff and a proposed sub-class of similarly situated persons worked for Defendant at their corporate-owned Wingstop restaurants located throughout New York City,Defendant also failed to pay Plaintiff and the proposed class statutorily required $100 premium for working a clopening in violation of New York City's Fair Workweek Law.

1

## PARTIES

4. Plaintiff is an adult, and resident of 26-33 91st Street, East Elmhurst, New York 11369.

5. Throughout the relevant time period, Plaintiff performed work for Defendant at a worksite located at: 2633 91st East Elmhurst Queens, New York, 11369.

6. Defendant WINGSTOP RESTAURANTS INC., is a foreign limited partnership organized and existing under the laws of the State of Texas.

7. According to the New York Department of State Records entry for Defendant WINGSTOP RESTAURANTS INC., maintains a service of process address in the care of C/O Corporation Service Company at 80 State Street, Albany, New York, 12207-2543.

8. Defendant had the authority to hire and fire the employees of the Defendant, including Plaintiff, and set the rate of pay, hours of employment, maintain employment records and other terms and conditions of their employment.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and the members of the proposed class are citizens of states different from that of Defendant.

10. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since the Plaintiff resides in New York State and is a citizen of that state, while Defendant is a citizen of Texas.

11. There are over 100 members in the proposed class.

12. Defendant is subject to personal jurisdiction in New York as they do business in New York.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

14. Together with the filing of this action, Plaintiff has served notice of this action and a copy of the complaint to be filed upon the New York City Department of Consumer and Worker Protections, Office of Labor Standards Division.

## FACTS

15. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of NYLL §190(2), 12 NYCRR 146-3.2, and NYC Admin Code, Ch. 12, § 20-1201.

16. At all relevant times, Plaintiff was a "fast food employee" within the meaning of

17. At all relevant times, Defendant was a "fast food establishment" within the meaning of

18. Defendant were and are covered "employers" within the meaning of the NYLL§190(3).

19. Upon information and belief, Plaintiff started employment with Defendant on or about July 20, 2021, and has worked for the Defendant continuously through on or about February 16, 2022.

20. Plaintiff was initially hired by the Defendant to work as a full-time cook at the Wingstop Store located at 31-14 Steinway St, Queens New York 11103.

21. Plaintiff worked at this location from July 2021 to February 11, 2022, and during the employment also worked shifts at the Delancey St. location.

22. From July 2021 until December 2021, the hourly rate paid by the Defendant was $17.00. During this time he was a cook, Plaintiff's primary job duties consisted of preparing food, setting up workstation with all needed ingredients, preparing ingredients to use in cooking, daily cleaning, and maintenance of the kitchen, taking orders from and serving customers, collecting payments, and closing out the register.

23. In or around December 2021, Plaintiff was promoted to shift leader and Defendant increased Plaintiffs hourly rate of pay to approximately $18.50. As shift leader, Plaintiff's primary job duties consisted of ensuring appropriate cleanliness, sanitation, safety standards are maintained, open and close the store, taking orders and serving customers, collecting payment, closing out the register, assist all other positions, when necessary, keep the restaurant safe and clean for both the crewmember and guest, assist in keeping the kitchen clean throughout the shift and general store maintenance, and cooking as needed.

24. At all relevant times, while performing job-related duties, Defendant required plaintiff to wear a uniform consisting of a hat and a button-down shirt, each in the color black and emblazoned with Defendants' logo in green.

25. Defendant, at the time of hire, provided Plaintiff with only one hat and one button down shirt. Despite Plaintiffs' plea for additional shirts, his request was repeatedly denied by the store manager and was told that additional shirts were only replaced if the clothing was absolutely destroyed by grease, or was torn, or otherwise not usable.

26. Plaintiff regularly worked 5 days per week, typically 8 hours per day, except that he did double shifts approximately 1-2 times per week.

27. Plaintiff's uniforms were issued by Defendant for the expressed benefit of Defendant, and it was a condition of their employment to wear them during each shift.

28. Defendant did not launder Plaintiff's required uniforms, nor did Defendant

4

offer to launder them.

29. Defendant never paid Plaintiff any uniform maintenance pays or reimbursement for the cost of maintaining uniforms.

30. Plaintiff had to pay for the cost of maintaining the uniforms, including laundering of uniforms, out of their own pocket.

31. Defendant, at the time of hire and during the course of employment, failed to compensate Plaintiff with an extra hour of pay, in addition to pay for the actual hours worked, when Plaintiff workday exceeded 10 hours from the beginning of their first shift to the end of their last.

32. Upon information and belief, continuously throughout his employment, Plaintiff worked a double shift—the first shift running from 9:00 a.m. to 5:00 p.m. and the second shift running from 5:00 p.m. till 1:00 a.m.

33. Plaintiff is entitled to eight hours of pay for the shifts worked, plus one extra hour of pay at the basic minimum wage rate, because the start to finish time of the workday exceeded ten hours.

34. Approximately two times per month, Plaintiff worked a clopening shift. For example, Plaintiff closed the restaurant on a Friday night, and returned to work to open the restaurant on Saturday morning, resulting in him sleeping for only 5 hours or less on these occasions.

35. Plaintiff received his schedule one week in advance.

36. The schedule always changed in terms of days off, where sometimes Plaintiff had weekdays as his off-days and other occasions when weekends were is off-days.

37. Approximately once per week, Plaintiff had to stay one or more hours past his scheduled end time because he needed to cover for another employee who was late or had called

in that they would not be coming.

## RULE 23 CLASS ACTION ALLEGATIONS

38. The Proposed Class is defined as:

> All persons employed in a non-exempt position by Defendant in New York at any time six years prior to the filling of this Complaint through the entry of judgment in this case.

39. In addition, Plaintiff seeks to represent a proposed Subclass as follows:

> All persons employed in a non-exempt position by Defendant in New York City at any time two years prior to the filling of this Complaint through the entry of judgment in this case.

40. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

41. There are more than 100 class members and Plaintiffs' claims are typical of those other members, in that anyone would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

42. Plaintiffs and the Proposed Class have all been injured in that they have been: (i) not paid required uniform maintenance pay; (ii) had to incur out-of-pocket work expenses that brought their take home pay below minimum wage; (iii) not paid required call-in pay; and (iv) not provided complete and accurate wage notices and statements.

43. Defendants' corporate-wide policies and practices affected every non-exempt employee who worked in New York in the same way.

44. Plaintiffs are able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

45. Indeed, Plaintiffs have advocated for employee rights, and fairness and equity in the workplace, including requesting higher pay, weekly payments, and reimbursement for

travel expenses.

46. Plaintiffs are represented by attorneys who are experienced and competent to bring this action.

47. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

48. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

    a. Whether Defendant employed Plaintiff and the class members within the meaning of the New York Labor Law;

    b. What is Defendant's policy with respect to what employees wear to work?

    c. What was the hourly rate paid by Defendant to employees?

    d. Did the employee work a shift or split-shift covering more than 10 hours in a workday?

    e. Were employees paid spread of hours premium?

    f. Whether Defendant failed to reimburse the cost of maintaining laundering, or purchasing a required uniform.

    g. Whether Defendant laundered or offered to launder the required uniforms;

    h. What items of information were indicated on employee wage notice and wage statements?

      i.   When did restaurant employees receive their schedule?

      j.   What changes were made to schedules and how soon in advance?

      k.   Did the restaurant provide a written copy of employees' regular schedule including the number of hours an employee can expect to work per week for the duration of the employee's employment and the expected days, times and locations of those hours?

      l.   Did the employee work clopening shifts?

## FIRST CAUSE OF ACTION

*Violation of the New York Labor Law – Unpaid Spread of Hours*

49. Defendant employed Plaintiff and the proposed class members within the meaning of New York Labor Law §§2 and 651.

50. New York Labor Law provides that employers are required to pay a "spread of hours" of one (1) additional hour's pay at the basic minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours. New York Labor Law § 146-1.6(a).

51. Upon information and belief, and continuously throughout his employment, Plaintiff worked a double shift—the first shift running from 9:00 a.m. to 5:00 p.m. and the second shift running from 5:00 p.m. till 1:00 a.m.

52. At all times relevant to this action, Plaintiff worked a spread of hours of more than ten (10) hours in a day for some or all days, and Defendant failed to pay Plaintiff and the putative class members an additional hour of pay for each such day in violation of the New York Minimum Wage Act, New York Labor Law § 650 et seq., including 12 NYCRR § 142.

53. Defendant knowingly and willfully operate their business with a policy of not paying Plaintiff and the proposed class "spread of hours" for each day that they work a shift in

8

excess of ten (10) hours, in direct violation of the New York State Department of Labor Regulations.

54. Due to Defendants' NYLL violations, Plaintiff are entitled to recover from Defendants, unpaid spread of hours compensation, maximum liquidated damages, prejudgment interest, and attorneys' fees and costs of the action, pursuant to NYLL § 663(1).

## SECOND CAUSE OF ACTION

*Violation of the New York Labor Law – Uniform Maintenance Pay*

55. At all relevant times, while performing job-related duties, Defendant required plaintiff to wear a uniform consisting of a hat and a button-down shirt, emblazoned with Defendants' logo.

56. The applicable Wage Order, at § 142-2.22, defined "Required uniform" as follows: "A required uniform shall be that clothing worn by an employee, at the request of the employer, while performing job-related duties or to comply with any State, city or local law, rule or regulation.

57. Plaintiff and the Class's uniforms were issued by Defendant for the expressed benefit of Defendant, and it was a condition of their employment to wear them during each shift.

58. Defendant never paid Plaintiff or the Class any uniform maintenance pays or reimbursement for the cost of maintaining uniforms.

59. Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant required.

60. The hourly rate paid by Defendant to Plaintiff and the Class were either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

61. In any event, Plaintiff not only brings this claim for the cost of the uniforms but also the cost of maintaining the uniforms.

62. Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations.

## THIRD CAUSE OF ACTION

### *Violations of New York City Fair Workweek Law-Clopenings*

63. Pursuant to the Fair Workweek Law, fast food employers cannot schedule employees to work two shifts over two days with less than 11 hours between shifts when the first shift ends the previous calendar day or spans two (2) calendar days unless (a) the employee has the opportunity to decline to work the clopening (b) the employee consents and puts consents in writing; and (c) the employer pays the worker a $100 premium per "clopening" worked.

64. On at least twenty occasions, Defendant scheduled Plaintiff to work two shifts over two days with less than 11 hours between shifts. For example, often the Plaintiff was scheduled to work Friday from 5:00 p.m. till midnight and then the following Saturday morning from 9:00 a.m. till 5:00 p.m. Therefore, Plaintiff worked a "clopening" because her Saturday shift began less than 11 hours after the end of Friday shift.

65. Upon information and belief, Defendant knowingly and willfully disregarded the provisions of the NYC's Fair Workweek Law as evidenced by Defendants failure to provide the Plaintiff with the opportunity to decline to work the clopening, failure to obtain Plaintiffs written consent to work the shift and failure to pay the Plaintiff a $100 premium each time he worked the clopening shift.

66. In accordance with the Fair Workweek Law, §7-623(a), a fast-food employer's failure to pay a fast-food employee the required $100 premium for working a

10

clopening and a fast-food employer's failure to obtain a fast-food employee's written consent to work a clopening shall each constitute a separate violation of §20-1231 of the Fair Workweek Law.

67. In accordance with Fair Workweek Law, § 20-1211(b), Plaintiff and the Proposed Sub-Class for these violations is entitled to compensatory damages to make the employee whole in an amount no less than $100 per violation, injunctive and declaratory relief, and prevailing party attorneys' fees and expenses.

## FOURTH CAUSE OF ACTION

*Violations of New York City Fair Workweek Law-Failure to Pay Schedule Change Premiums*

68. Pursuant to the Fair Workweek Law, no later than when a new fast food employee receives such employee's first work schedule, a fast food employer shall provide such employee with a written copy of their regular schedule including the number of hours a fast food employee can expect to work per week for the duration of the employee's employment and the expected days, times and locations of those hours.

69. Pursuant to the Fair Workweek Law, a fast food employer shall provide a fast food employee with written notice of a work schedule containing regular shifts and on-call shifts on or before the employee's first day of work. For all subsequent work schedules, the fast food employer shall provide such notice no later than 14 days before the first day of any new schedule. Such work schedule shall span a period of no less than seven days and contain all anticipated regular shifts and on-call shifts that the employee will work or will be required to be available to work during the work schedule.

70. Where a regular schedule is not provided 14 days in advance, and schedules are provided on shorter notice, and where changes to such schedules are made, the Fair Workweek Law considers those violations and has a schedule to assess civil penalties owed and

payable to Plaintiff. § 20-1222.

71. In accordance with Fair Workweek Law, § 20-1211(b), Plaintiff and the Proposed Sub-Class for these violations is entitled to all civil penalties, plus compensatory damages to make the employee whole in an amount no less than $100 per violation, injunctive and declaratory relief, and prevailing party attorneys' fees and expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

B. Designation of Plaintiff as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

C. Damages for Unpaid Wages in an amount to be determined at trial;

D. Compensatory damages in an amount to be determined at trial;

E. Liquidated damages to the extent permitted by law pursuant to the NYLL, but not for Class claims;

F. Prejudgment and post-judgment interest;

G. Reasonable attorneys' fees and costs of the action;

H. All other damages and relief authorized by statute or law and permitted herein, including but not limited to punitive or liquidated damages, costs and attorney fees, and prejudgment interest.

I. Injunctive and Declaratory Relief;

J. Such other relief as this Court shall deem just and proper.

## **JURY DEMAND**

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, New York
         September 27, 2022

**LAW OFFICE OF MOHAMMED GANGAT**

By: _____
Mohammed Gangat, Esq.
675 Third Avenue
Suite 1810
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiffs and Proposed Class*